# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELANIE SHEPARD, *et al.*, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>GERBER PRODUCTS COMPANY,<br><br>    Defendant. | Case No.: 2:21-cv-01977-CCC-MF |
| JESSICA MOORE, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>GERBER PRODUCTS COMPANY,<br><br>    Defendant. | Case No.: 2:21-cv-02516-CCC-MF |
| MICHELE WALLACE, *et al.*, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>GERBER PRODUCTS COMPANY, BEECH-NUT NUTRITION COMPANY, NURTURE, INC. AND HAIN CELESTIAL GROUP, INC.*,*<br><br>    Defendants. | Case No.: 2:21-cv-02531-CCC-MF |

| | |
|---|---|
| MUSLIN PIERRE-LOUIS,<br>*individually and on behalf of all others similarly situated*,<br><br>　　　　Plaintiff,<br><br>　　　　　v.<br><br>GERBER PRODUCTS COMPANY,<br><br>　　　　Defendant. | Case No.: 2:21-cv-04791 |
| JEREMY CANTOR, et al,<br>individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>　v.<br><br>GERBER PRODUCTS COMPANY,<br><br>Defendant. | Case No.: 2:21-cv-03402-CCC-ESK |

## TABLE OF CONTENTS

**Page**

I. Procedural History ...................................................................................................1

II. All Claims Filed in this Court Against Gerber Should Be
    Consolidated ........................................................................................................... 2

III. The Consolidated Claims Against Gerber Should Be Transferred
     to the Eastern District of Virginia Where Gerber is Headquartered .................... 5

IV. This Court Has the Authority to Grant the Motion to Transfer Even
    Assuming *Arguendo* that Personal Jurisdiction Is Lacking ................................ 6

V. The Pertinent Factors Favor Transfer of the Gerber Claims to the
   Eastern District of Virginia .................................................................................... 7

VI. Conclusion ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

*Chernus v. Logitech, Inc.*,
 *No. 17-673*, (FLW), 2018 WL 1981481 (D.N.J. April 27, 2018) ........................................... 1

*Goldlawr, Inc. v. Heiman*,
 369 U.S. 463 (1962) .............................................................................................................. 6

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) .................................................................................................... 7

*Kelly v. RealPage, Inc.*,
 No. 2:19-CV-01706-JDW, (E.D. Pa. Dec. 18, 2020) ............................................................. 2

*Lafferty v. St. Riel*,
 495 F.3d 72–77 (3d Cir. 2007) .............................................................................................. 5

*Norwood v. Kirkpatrick*,
 349 U.S. 29 (1955) ................................................................................................................ 7

*Stevens Yachts of Annapolis, Inc. v. American Yacht Charters, Inc.*,
 571 F.Supp. 467 (1983) ......................................................................................................... 6

*United States v. Berkowitz*,
 328 F.2d 358 (3d Cir.) ........................................................................................................... 6

### Statutes

28 U.S.C. §1404(a) ................................................................................................................ 5, 6, 7
28 U.S.C. §1406(a) ..................................................................................................................... 5, 6

**BRIEF OF PLAINTIFF JESSICA MOORE IN RESPONSE TO MOTION OF OTHER PLAINTIFFS TO CONSOLIDATE DISTRICT OF NEW JERSEY ACTIONS AND IN SUPPORT OF CROSS-MOTION TO TRANSFER ALL GERBER CLAIMS TO THE EASTERN DISTRICT OF VIRGINIA**

Plaintiff Jessica Moore, the second litigant to bring suit against Defendant Gerber Products Company in this Court, hereby responds to the motion of other plaintiffs to consolidate all actions filed in the District of New Jersey and respectfully cross-moves to transfer any such consolidated actions against Gerber to the Eastern District of Virginia, where Gerber is headquartered, and in support thereof, states as follows:

**I.     Procedural History**

The first-filed action brought by Plaintiffs Shepard and Vargas (both Connecticut citizens), Valdez (a Colorado citizen) and Quarles (a Texas citizen), alleged that Gerber is a Michigan corporation with its headquarters in New Jersey. *Shepard* Complaint at ¶¶7-11. Plaintiff Moore (a Texas citizen) made a similar allegation concerning Gerber's citizenship. *Moore* Complaint at ¶¶14, 17.

However, both the Shepard and Moore Complaints were mistaken. While Gerber had originally maintained its headquarters in Florham Park, New Jersey, in or about 2018, it relocated its headquarters, as well as those of affiliated corporation Nestlé USA, to the same location in Rosslyn, Virginia.[1] Given its current headquarters in Virginia, Gerber may well argue that this Court lacks personal jurisdiction over it with respect to claims alleged by or on behalf of consumers in states other than new Jersey, citing *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). To be clear, Plaintiffs Moore does not concede the lack of personal jurisdiction over Gerber, and the great and growing weight of authority holds that *Bristol-*

---

[1] The public parent of each of these companies is Nestlé S.A., a Swiss company.

1

*Myers **does not*** extend to class actions.[2]  But that does not mean Gerber will not contest jurisdiction in New Jersey over the claims asserted by or on behalf of consumers in other states — or that other litigants in the future may not assert such a jurisdictional challenge.  To obviate any even arguable jurisdictional defense, the actions against Gerber in this forum should be consolidated, and then transferred for resolution on the merits with the pending consolidated actions against Gerber in the Eastern District of Virginia.[3]

## II.  All Claims Filed in this Court Against Gerber Should Be Consolidated

There are currently five proposed class actions pending in this Court asserting a variety of claims against Gerber.[4]  With the exception of the *Wallace* action, each of the class actions is brought solely against one or more Gerber entities as defendants.  Plaintiff Moore believes that all these actions are similar in nature and merit consolidation**, *to the extent they assert claims against Gerber***, but respectfully submits that the *Wallace* action is significantly broader in scope because it also names three other major baby food manufacturers – Beech-Nut, Nurture and Hain – as

---

[2] *See, e.g., Kelly v. RealPage, Inc.*, No. 2:19-CV-01706-JDW, 2020 WL 7479620, at *4 (E.D. Pa. Dec. 18, 2020), *reconsideration denied,* No.:19-CV-01706-JDW, 2021 WL 37722 (E.D. Pa. Jan. 5, 2021) (explaining "[a]lthough the Third Circuit has not considered whether *Bristol-Myers* applies to a Rule 23 class action, trial courts in this District, and at least one Circuit Court, have held that the 'principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action in federal court under a federal statute.'" (quoting *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443 (7th Cir. 2020)).

[3] The *Keeter, et al. v. Gerber Products Co.*, No. 1:21-cv-00269-LO-TCB and *Moore v. Gerber Products Co.*, 1:21-cv-00277-LO-TCB actions pending in the Eastern District of Virginia were consolidated on March 16, 2021.  One other complaint was recently filed in the Eastern District of Virginia and was marked as related to the earlier filed *Keeter* and *Moore* actions.  *See Hazely, et al. v. Gerber Products Co,* No. 1-21-cv-00321 (E.D. Va. March 16, 2021).

[4] In the order of filing, the class actions are: (1) *Shepard, et al. v. Gerber Products Co*., No. 2:21-cv-01977-CCC-MF (filed Feb. 5, 2021); (2) *Moore v. Gerber Products Co.*, No. 2:21-cv-02516-CCC-MF (filed Feb. 12, 2021); (3) *Wallace v. Gerber Products Co., Beech-Nut Nutrition Co., Nurture, Inc. and Hain Celestial Group, Inc.*, No. 2-21-cv-02531-CCC-MF (filed Feb. 12, 2021); (4) *Cantor v. Gerber Products Co*., No. 2:21-cv-03402-CCC-ESK (filed Feb. 24, 2021); and (5) *Muslin Pierre-Louis v. Gerber Products Co.*, No. 2:21-cv-04791 (filed Mar. 11, 2021).

defendants and seeks to recover from them as well and, therefore, the non-Gerber claims in *Wallace* do not warrant consolidation.

While there are some common questions of fact relating to the claims against multiple baby food manufacturers, the stubborn fact remains that the claims against Gerber will mostly rise or fall depending on the facts specific to Gerber, including, but certainly not limited to:

- What steps, if any, did Gerber take to investigate and select its suppliers and to assess the level of heavy metals present in in the soil, air and water used in growing these ingredients;

- How it selected and used vitamins and other additives to reduce or eliminate the risks associated with its products;

- Whether and to what extent Gerber tested the ingredients for its baby food products for the presence of toxic heavy metals, and what such tests showed in terms of the contamination of these ingredients;

- Whether and to what extent Gerber tested its final products, and what such tests indicated for the presence of toxic heavy metals in Gerber baby food products;

- What Gerber knew about the extent of contamination, and when did it know it;

- What strategies did Gerber adopt in advertising and marketing its baby food product to consumers, and how, it at all, this changed over time;

- What, if any, action Gerber took in response to outside studies of contamination of its baby food products;

defendants and seeks to recover from them as well and, therefore, the non-Gerber claims in *Wallace* do not warrant consolidation.

While there are some common questions of fact relating to the claims against multiple baby food manufacturers, the stubborn fact remains that the claims against Gerber will mostly rise or fall depending on the facts specific to Gerber, including, but certainly not limited to:

- What steps, if any, did Gerber take to investigate and select its suppliers and to assess the level of heavy metals present in in the soil, air and water used in growing these ingredients;

- How it selected and used vitamins and other additives to reduce or eliminate the risks associated with its products;

- Whether and to what extent Gerber tested the ingredients for its baby food products for the presence of toxic heavy metals, and what such tests showed in terms of the contamination of these ingredients;

- Whether and to what extent Gerber tested its final products, and what such tests indicated for the presence of toxic heavy metals in Gerber baby food products;

- What Gerber knew about the extent of contamination, and when did it know it;

- What strategies did Gerber adopt in advertising and marketing its baby food product to consumers, and how, it at all, this changed over time;

- What, if any, action Gerber took in response to outside studies of contamination of its baby food products;

- What actions Gerber took in dealing with regulatory agencies, including the Food and Drug Administration and the Environmental Protection Agency, concerning the determination of safe levels of contaminants in its baby food products and their ingredients;
- What actions, if any, Gerber took in connection with or in response to the Healthy Babies Bright Futures 2019 baby food report;
- What actions Gerber took in connection with or in response to the Congressional investigation of its baby food products.

The presence of three other manufacturers in the litigation against Gerber is likely to make the litigation far more complex, and will inevitably slow down the progression of the matter, as three additional sets of defense counsel are likely to file more motions as well as create additional conflicts that will likely delay the scheduling of proceedings.

At the same time, actions have been brought in a number of different districts suing these other baby food manufacturers. As a consequence the MDL motion filed before the Judicial Panel on Multi-District Litigation ("JPML") already lists 43 cases brought against the various baby food manufacturers.[5] If the multi-defendant claims in the *Wallace* action are consolidated with the other cases currently pending in this District that have been brought solely against Gerber, it will complicate the prosecution of a consolidated action. Moreover, after the MDL motion was filed to transfer *all* of the actions against *all* defendants to the Eastern District of New York, the JPML signaled its hesitancy about aggregate consolidation of all cases against all defendants in a single forum when it issued a text order stating:

---

[5] A copy of the MDL motion (without copies of the various complaints) is attached as Exhibit A to this brief.

4

> In their briefs [on the MDL motion], the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases.

Judicial Panel on Multi-District Litigation Order (March 9, 2021) (copy attached as Exhibit B).

Under these circumstances, the most efficient manner of proceeding would be for this Court to sever the claims against Gerber in the *Wallace* action and consolidate the five "pure" Gerber cases – eliminating the added, unnecessary complexity associated with prosecuting claims against multiple defendants in a single consolidated action.

### III. The Consolidated Claims Against Gerber Should Be Transferred to the Eastern District of Virginia Where Gerber is Headquartered

Two federal statutes govern transfer motions. The first, 28 U.S.C. §1406(a), applies where suit was filed in an inappropriate forum, providing:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The second is 28 U.S.C. §1404(a), which applies where jurisdiction and venue was properly alleged in a complaint but another forum is favored, states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The Third Circuit has addressed the distinction between when these two statutory provisions apply, explaining:

> Distinctions between §§ 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law. Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum …. Section 1406(a) comes into play where plaintiffs file suit in an improper forum …. In those instances, district courts are required either to dismiss or transfer to a proper forum.

*Lafferty v. St. Riel*, 495 F.3d 72, 76–77 (3d Cir. 2007).

5

Here, there is no question that the federal court in the Eastern District of Virginia has general personal jurisdiction over Gerber by plaintiffs or class members residing in any state based on its headquarters in Arlington County, Virginia. That means that Gerber may undeniably be sued in that forum by residents of both Virginia and any other State, including all of the plaintiffs whose complaints were filed in the District of New Jersey, obviating any even arguable defense to personal jurisdiction under *Bristol-Myers*.

To the extent Gerber successfully contests personal jurisdiction and venue in New Jersey, Plaintiff Moore submits that transfer to the Eastern District of Virginia under Section 1406(a) is the appropriate statutory remedy. If, however, this Court concludes otherwise and finds that personal jurisdiction and venue is properly laid in the District of New Jersey for any of these actions, transfer would nevertheless still be warranted under Section 1404(a).

### IV. This Court Has the Authority to Grant the Motion to Transfer Even Assuming *Arguendo* that Personal Jurisdiction Is Lacking

The Supreme Court has held that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Likewise, the law in the Third Circuit has held, following *Goldlawr*, that Section 1404(a) "clearly authorizes the transfer of this civil action" even where the transferor court lacks personal jurisdiction over the defendant." *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.), *cert. denied*, 379 U.S. 821 (1964); *see also Stevens Yachts of Annapolis, Inc. v. American Yacht Charters, Inc.*, 571 F.Supp. 467 (1983) (following *Berkowitz*, held "[i]n order to transfer pursuant to 28 U.S.C. § 1404(a), a finding of jurisdiction in the transferring court is unnecessary").

Therefore, whether this Court entertains the motion to transfer pursuant to Section 1404(a) or Section 1406(a), no even arguable lack of personal jurisdiction over Gerber in New Jersey would preclude transfer of the consolidated claims against Gerber to the Eastern District of Virginia.

### V. The Pertinent Factors Favor Transfer of the Gerber Claims to the Eastern District of Virginia

Transfer to the Eastern District of Virginia is warranted under the broad discretion afforded by Section 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). As the Third Circuit has explained,

> … no definitive formula or list of the factors to consider courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (internal citations omitted).

A review of these considerations reveals that Gerber transferred its headquarters and senior executive staff to Virginia approximately three years ago, and any current employees remaining in New Jersey – or elsewhere – should be readily requested to appear in court for hearings, and the pretrial testimony of present or former employees can be obtained at mutually convenient locations. Similarly, plaintiffs' counsel are accustomed to litigating cases across the country and

7

would encounter no difficulties in litigating these actions in the Eastern District of Virginia's courthouse in Alexandria, Virginia, just outside of Washington, D.C.

Furthermore, the trial in a single forum of all claims of all plaintiffs against Gerber is likely to be far more efficient than disaggregated litigation in multiple locales. Managing discovery relating to the same claims in different courts is likely to cause inefficiencies and delays, and could lead to conflicting rulings. In the same vein, it would be impractical, at best, for multiple courts to entertain claims against Gerber arising from the same conduct in multiple forums, where the risk of inconsistent factual and legal determinations would be ever present.

Moreover, the Eastern District of Virginia has a well-earned reputation as a "rocket docket" that expeditiously moves cases through discovery and motion practice, leading to highly economical litigation. A comparison of statistics maintained by the Administrative Office of U.S. Courts also bears out the clear advantages of litigating the claims against Gerber in the Eastern District of Virginia given the much heavier caseload in District of New Jersey:[6]

|  | District of New Jersey | Eastern District of Virginia |
|---|---|---|
| Average civil filings per Judgeship | 1,156 | 300 |
| Average pending cases per Judgeship | 2,742 | 349 |
| Median months from filing to civil disposition | 9.9 | 6.0 |
| Median months from filing to civil trial | 37.1 | 11.2 |

---

[6] All figures are for the 12-month period ending September 30, 2020. Copies of the U.S. District Court – Judicial Caseload Profiles for the District of New Jersey and the Eastern District of Virginia are attached as Exhibit C.

| | | | | |
|---|---|---|---|---|
| Number and percentage of civil cases over 3 years old | 2,762 | 6.1% | 73 | 2.8% |

In short, because it is in the interests of both the judiciary and the litigants to reach a prompt resolution of this important litigation relating to the sale of baby food products fed to millions of infants and small children, transfer to the Eastern District of Virginia is clearly the best option for litigating all claims against Gerber.

## VI. Conclusion

For the foregoing reasons, this Court should (1) sever and consolidate all claims against Gerber, and (2) transfer those consolidated Gerber claims to the Eastern District of Virginia.

Dated:  March 17, 2021                                    Respectfully submitted,

*/s/ Mark R. Rosen*
Mark R. Rosen
**Barrack, Rodos & Bacine**
One Gateway Center, Suite 2600
Newark, NJ 07102
T: (973) 297-1484
F: (973) 297-1485
mrosen@barrack.com

    and

Julie B. Palley
**Barrack, Rodos & Bacine**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
T: (215) 963-0600
F: (205) 963-0838
jpalley@barrack.com

*Attorneys for Plaintiff Jessica Moore and the Proposed Class*

9