# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JESSICA MOORE, individually and on
behalf of all others similarly situated,

                Plaintiff,

       v.

GERBER PRODUCTS COMPANY
(d/b/a Nestlé Nutrition, Nestlé Infant
Nutrition, or Nestlé Nutrition North
America),

                Defendant.

CASE NO.: 2:21-cv-02516-CCC-MF

**Hon. Claire C. Cecchi**
**Motion Return Date: April 19, 2021**

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JESSICA MOORE'S CROSS-MOTION TO TRANSFER ALL GERBER CLAIMS TO THE EASTERN DISTRICT OF VIRGINIA

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................2

ARGUMENT ...................................................................................8

I.     Plaintiff Moore's Motion Is Procedurally Improper .......................8

II.    The NJ Actions Are Not Transferrable Under 28 U.S.C. § 1406(a)
       Because Venue Is Proper In New Jersey ....................................10

III.   Transfer Is Improper Under Section 1404(a) ..............................13

CONCLUSION ...............................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcand v. Brother International Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ...................................................................5

*In Re: Baby Food Marketing, Sales Practices and Products Liability Litigation*,
   MDL No. 2997 (J.P.M.L.) .................................................................................8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 461 (1985) .........................................................................................13

*Cantor, et. al. v. Gerber Products Company*,
   No. 2:21-cv-03402-CCC-ESK ...........................................................................3

*Consolidated Properties, Inc. v. Sherwin-Williams Co.*,
   No. 2017-13, 2018 WL 4610622 (D.V.I. Sept. 25, 2018) ..............................15

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925, 930 (3d Cir. 1941) ....................................................................17

*Diaz-Lebel v. TD Bank USA, N.A.*,
   No. 17-1611, 2017 WL 5451747 (D.N.J. Nov. 14, 2017) ...............................19

*Dish Network Corp. v. TiVo, Inc.*,
   604 F. Supp. 2d 719 (D. Del. Mar. 31, 2009) .................................................10

*Fondacaro v. Gerber Products Company*,
   No. 2:21-cv-05032-CCC-MF ..............................................................................3

*Henry v. Gerber Products Company*,
   No. 2:21-cv-05864-CCC-MF ..............................................................................3

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .........................................................................13, 15

*Keeter v. Gerber Products Co.*,
   No. 21-cv-00269-LO-TCB (E.D. Va. March 3, 2021) .....................................18

*Kennedy v. Axa Equitable Life Ins. Co.*,
    No. 06-6082, 2007 WL 2688881 (D.N.J. Sept. 11, 2007)....................................5

*Martin v. Gerber Products Company*,
    No. 2:21-cv-05846-CCC-MF ..........................................................................3

*Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*,
    No. 09-235, 2009 WL 2778104 (D.N.J. Aug. 27, 2009)....................................17

*Moore v. Gerber Products Company*,
    No. 2:21-cv-02516-CCC-MF ..........................................................................3

*Motamed v. Chubb Corp.*,
    No. 15-7262, 2016 WL 1029791, at *3 (D.N.J. Mar. 15, 2016) ........................5

*One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*,
    987 F. Supp. 317, 326 (D.N.J. 1997)................................................................14

*Panitch v. Quaker Oats Co.*,
    No. 16-4586, 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017) ................................11

*Pierre-Louis v. Gerber Products Company*,
    No. 2:21-cv-4791-CCC-MF.............................................................................3

*Plum Tree, Inc. v. Stockment*,
    488 F.2d 754, 755-57 (3d Cir. 1973)................................................................14

*In re: Processed Egg Prods. Antitrust Litig.*,
    MDL No. 08-md-2002, 2019 WL 5394109 (E.D. Pa. Oct. 22,
    2019) ..................................................................................................................14

*RJR Mechanical, Inc. v. Vassallo*,
    No. 12-cv-1810, 2017 WL 1534192 (D.N.J. Apr. 27, 2017) ..............................5

*Shepard v. Gerber Products Company*,
    No. 2:21-cv-01977-CCC-MF (D.N.J.) ..........................................................2, 3

*Smith v. McIver*,
    22 U.S. (9 Wheat.) 532, 535 (1824) .................................................................17

*Swindell-Dressler Corp. v. Dumbauld*,
    308 F.2d 267 (3d Cir. 1962) .............................................................................10

*Thompson v. Glob. Mktg. Research Servs.*,
   No. 15-3576, 2016 WL 233702 (E.D. Pa. Jan. 19, 2016) ............................17, 18

*Villari Brandes & Kline, PC v. Plainfield Specialty Holdings II, Inc.*,
   No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009) ....................17

*Wallace v. Gerber Products Company*,
   No. 2:21-cv-02531 .................................................................................................3

**Statutes**

28 U.S.C. § 1391 .......................................................................................11, 13

28 U.S.C. § 1404(a) ...........................................................................2, 13, 14, 17

28 U.S.C. § 1406(a) ...............................................................................1, 10, 12

28 U.S.C. § 1406(b) .....................................................................................12

N.J. Stat. Ann. 56:8-1.................................................................................10

Defendant Gerber Products Company ("Gerber") respectfully submits this Memorandum of Law in opposition to Plaintiff Jessica Moore's ("Plaintiff Moore") Cross-Motion to Transfer All Gerber Claims to the Eastern District of Virginia (the "Transfer Motion"). (Dkt. No. 8).

## PRELIMINARY STATEMENT

The *Shepard* Action and the *Moore* Action (defined below) are two of seven actions pending against Gerber in the District of New Jersey asserting false advertising and similar claims stemming from a February 4, 2021 report issued by a subcommittee of the United States House of Representatives relating to the alleged presence of heavy metals in certain baby food products (the "NJ Actions"). The *Shepard* plaintiffs filed a motion to consolidate the NJ Actions—a motion Gerber supports. In response to the consolidation motion, Plaintiff Moore filed— in the wrong action—a purported cross-motion seeking to transfer venue of the NJ Actions to the Eastern District of Virginia. That motion should be denied for three separate reasons. *First*, the Transfer Motion is procedurally improper because Plaintiff Moore filed it in the wrong action and failed to provide notice to the other parties in the various NJ Actions who may be impacted by the transfer request. *Second*, venue is appropriate in New Jersey and, accordingly, the cases pending against Gerber here should be consolidated and remain in New Jersey, and transfer to any other district under 28 U.S.C. § 1406(a) would be improper. *Third*, Plaintiff

1

Moore failed to satisfy her burden that transfer under 28 U.S.C. § 1404(a) is warranted.  In fact, the relevant § 1404(a) factors support these actions against Gerber proceeding in this district.  Accordingly, the Court should deny Plaintiff Moore's transfer request.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

***The U.S. House of Representatives Report.***  On February 4, 2021, the U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform released a fundamentally flawed report taking issue with the alleged presence of certain naturally occurring heavy metals in various baby food manufacturers' products, including Gerber's (the "Report"). *See Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury* (Feb. 4, 2021).[1]  The Report has been the catalyst for dozens of putative class actions filed across the country against Gerber and other manufacturers.

***The New Jersey Gerber Actions.***  The first-filed case against Gerber stemming from the Report, *Shepard v. Gerber Products Company*, No. 2:21-cv-01977-CCC-MF (D.N.J.), was filed on February 5, 2021, and is pending before this Court.  Since then, numerous actions against Gerber and other baby food

---

[1] Gerber disputes the findings in the Report and maintains that it has not engaged in any false advertising or other unlawful activity with respect to its baby food products.

product companies have been filed in various courts around the country; the majority of those filed against only Gerber (seven) have been filed in the District of New Jersey and assigned to this Court: *Shepard v. Gerber Products Company*, No. 2:21-cv-01977-CCC-MF (the "*Shepard* Action"); *Moore v. Gerber Products Company*, No. 2:21-cv-02516-CCC-MF (the "*Moore* Action"); *Cantor, et. al. v. Gerber Products Company*, No. 2:21-cv-03402-CCC-ESK (the "*Cantor* Action"); *Pierre-Louis v. Gerber Products Company*, No. 2:21-cv-4791-CCC-MF (the "*Pierre-Louis* Action"); *Fondacaro v. Gerber Products Company*, No. 2:21-cv-05032-CCC-MF (the "*Fondacaro* Action"); *Martin v. Gerber Products Company*, No. 2:21-cv-05846-CCC-MF (the "*Martin* Action"); and *Henry v. Gerber Products Company*, No. 2:21-cv-05864-CCC-MF (the "*Henry* Action").

      ***The Consolidation Motion in the* Shepard *Action.*** On March 12, 2021, the *Shepard* plaintiffs filed a motion to consolidate, within the District of New Jersey, the then-pending NJ Actions against Gerber ("Motion to Consolidate"), which included the *Shepard* Action, the *Pierre-Louis* Action, the *Moore* Action, the *Cantor* Action, and *Wallace v. Gerber Products Company*, No. 2:21-cv-02531 (the "*Wallace* Action").[2] (*Shepard* Action Dkt. No. 12). Plaintiffs in the *Shepard* Action filed their Motion to Consolidate on the *Shepard* Action docket and provided notice and a copy of the Motion to Consolidate to the parties in the other

---

[2] On March 19, 2021, the *Wallace* Action plaintiffs filed a notice of voluntary dismissal without prejudice.

NJ Actions.  (*Shepard* Action Dkt. No. 12; Graham Decl. Ex. A (March 12, 2021 email from Taylor Reynolds)).

The Motion to Consolidate contends that Plaintiffs' NJ Actions are based on the same basic allegations ("all Plaintiffs' claims are based upon purchasing Defendants' baby food products that contain undisclosed levels of heavy metals, which had parents known, would have altered their purchasing decisions"). (*Shepard* Action Dkt. No. 12-1 at 2).  Plaintiffs in the *Shepard* Action conclude: "[c]onsolidating [the NJ Actions] would provide substantial benefits to all and would eliminate the need for this District to engage in needless duplication of effort by litigating five [now, seven] identical cases simultaneously."  *Id.*

***Gerber's Presence in New Jersey*.**  In or around 2007, Gerber was acquired from Novartis Consumer Health by Nestlé Holdings, Inc.  Gerber was headquartered in New Jersey before it was acquired by Nestlé Holdings, Inc. (Georgina M. de la Peña Decl. ¶ 4.)  In April 2018, Gerber announced that it planned to relocate its headquarters from Florham Park, New Jersey to Arlington, Virginia.  (*Id*. at ¶ 5.)  That transition began in 2018, but was not completed until December 31, 2019.  (*Id*. at ¶ 6.)  Gerber was located in New Jersey during the majority of the time relevant to the claims asserted in the NJ Actions. Significantly, its Regulatory, Medical-Scientific, Sales, Marketing, and Legal departments (among others), including its senior leadership team and key decision-

makers, were located in New Jersey.  (Georgina M. de la Peña Decl. ¶ 7.)

Moreover, during the transition, Gerber permitted its employees impacted by the

relocation to work from New Jersey, where feasible.  (*Id.* at ¶ 8.)

At the time that Gerber began its transition from New Jersey to Virginia, it

employed approximately 146 people in New Jersey. (*Id.* at ¶ 10.)  After Gerber

began its transition from New Jersey to Virginia in April 2019, approximately 75

employees declined to relocate to Virginia, and an additional approximately 14 did

not receive offers to remain with the company and relocate.  (*Id.*)  These former

employees generally remained in New Jersey.  (*Id.*)  Even after the relocation

process was complete, several Gerber employees continued to work in New Jersey.

(*Id.*)  Gerber estimates that the majority of its New Jersey workforce decided to

remain in New Jersey rather than relocate to Virginia.   Moreover, Gerber

employees continue to work from New Jersey.  (*Id.*)

***Gerber Engaged in the Relevant Advertising, Labeling and Regulatory***

***Review in New Jersey.***  Based on applicable statute of limitations periods,[3] the

putative class period of the NJ Actions dates back to at least March 2015.  During

this timeframe, the relevant Gerber officers and employees—including key

---

[3] *See, e.g. Kennedy v. Axa Equitable Life Ins. Co.*, No. 06-6082, 2007 WL 2688881, at *2 (D.N.J. Sept. 11, 2007) (statute of limitations for NJCFA is six years); *Motamed v. Chubb Corp.*, No. 15-7262, 2016 WL 1029791, at *3 (D.N.J. Mar. 15, 2016 (statute of limitations for negligent misrepresentation in New Jersey is six years); *RJR Mechanical, Inc. v. Vassallo*, No. 12-cv-1810, 2017 WL 1534192, at *6 (D.N.J. Apr. 27, 2017) (statute of limitations for unjust enrichment in New Jersey is six years); *Arcand v. Brother International Corp.*, 673 F. Supp. 2d 282, 304 (D.N.J. 2009) (statute of limitations for fraud in New Jersey is six years).

marketing and regulatory teams—made decisions concerning the advertising and labeling of the products at issue in New Jersey.  (Georgina M. de la Peña Decl. ¶ 12.)   Similarly, Gerber performed the regulatory review regarding the subject products while located in New Jersey for approximately four to five of the six years it is alleged to have engaged in the purported unlawful activities.  (*Id*. at ¶ 11.)   Indeed, Plaintiff Moore herself affirmatively alleges that "a substantial portion of the events complained of herein took place in this District."  *Moore* Action Dkt. No. 1 ¶ 20; *see also Shepard* Action Dkt. No. 1 ¶ 14 ("a substantial portion of the events complained of herein took place in this District"); *Fondacaro* Action Dkt. No. 1 ¶ 12 (same); *Henry* Action Dkt. No. 1 ¶ 15 (same); *Martin* Action Dkt. No. 1 ¶ 6 (similar); *Pierre-Louis* Action Dkt. No. 1 ¶ 11 ("the acts and omissions giving rise to this lawsuit took place in this District");  *Cantor* Action Dkt. No. 7 ¶ 32 ("a substantial portion of the event complained of herein took place in this District").

     *Gerber Employees and Witnesses Are Located in New Jersey.*  Despite its move to Virginia, several Gerber employees continue to work full-time in New Jersey, including members of Gerber's Medical Science and Regulatory Unit. (Georgina M. de la Peña Decl. ¶ 16.)

     In addition, certain former employees who possess information relevant to the claims alleged in the NJ Actions, but who no longer work for the company

following the relocation, remain in New Jersey.  (Georgina M. de la Peña Decl. ¶ 17.)   These individuals include former employees from Gerber's Marketing Department who possess information regarding the labeling, advertising and marketing of Gerber's baby food products.  (*Id*.)  To the extent these cases proceed to discovery, plaintiffs will likely seek discovery from these relevant former employees who remain in New Jersey.

***Plaintiff Moore's Transfer Motion.***  Purportedly in response to the *Shepard* plaintiffs' Motion to Consolidate, on March 17, 2021, Plaintiff Moore filed the Transfer Motion only in the *Moore* Action, and styled it as a "Notice" averring that "Plaintiff Jessica Moore cross-moves for an order transferring all actions to the extent that they assert claims against Gerber Products Company to the United States District Court for the Eastern District of Virginia[.]"  (*Moore* Action Dkt. No. 8.)  Although the *Moore* plaintiff styled her motion as a "cross-motion" to the Motion to Consolidate, she did not file it in the *Shepard* Action or any of the other NJ Actions.  (*Id*.)  Thus, the Transfer Motion failed to provide notice to any other parties in the other pending NJ Actions who would be impacted by the requested transfer.

In the Transfer Motion, Plaintiff Moore *agrees* with the relief requested by the *Shepard* plaintiffs that the NJ Actions should be consolidated.  (*See Moore* Action Dkt. No. 8-1 at 2 ("the actions against Gerber in this forum should be

consolidated"); *id.* ("Plaintiff Moore believes that all these actions are similar in nature and merit consolidation, **to the extent they assert claims against Gerber**").) Plaintiff Moore, however, argues that the NJ Actions should then be transferred to the Eastern District of Virginia because "Gerber may well argue that this Court lacks personal jurisdiction over it with respect to claims alleged by or on behalf of consumers in states other than [N]ew Jersey"—even though she "does not concede the lack of personal jurisdiction over Gerber." (*Id.* at 1.) Gerber does not, and will not, contest this Court's exercise of personal jurisdiction over Gerber with respect to the claims made by any of the plaintiffs in the NJ Actions or by any other potential plaintiff alleging similar claims as those alleged in the NJ Actions.[4]  In fact, Gerber will seek to transfer all cases filed in other districts to this District (including the later-filed actions pending in the Eastern District of Virginia).[5]

## ARGUMENT

## I.    Plaintiff Moore's Motion Is Procedurally Improper

At the outset, the Court should deny Plaintiff Moore's Transfer Motion because it is procedurally improper.  First, the Transfer Motion is not an

---

[4] Gerber reserves it right to assert all other available defenses.

[5] Plaintiffs in an action filed in the Eastern District of New York against Gerber and several other defendants have filed a motion with the United States Judicial Panel on Multidistrict Litigation for consolidation and transfer of the various cases stemming from the Report to the Eastern District of New York for pretrial proceedings ("MDL Motion").  *See In Re: Baby Food Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2997 (J.P.M.L.).  Gerber opposes the MDL Motion for the reasons it will set forth in its forthcoming response, due April 13, 2021.

appropriate cross-motion and is improper in so far as it is not "related to the subject matter" of the Motion to Consolidate filed by the *Shepard* plaintiffs, as required by Local Rule 7.1(h). Indeed, Plaintiff Moore joins in the request to consolidate the NJ Actions in this Court. (*See Moore* Action Dkt. No. 8-1 at 2 ("Plaintiff Moore believes that all these actions are similar and merit consolidation, ***to the extent they assert claims against Gerber***").)

Second, the Transfer Motion is procedurally improper because Plaintiff Moore filed it in the *Moore* Action, but not in the *Shepard* Action where the Motion to Consolidate was filed. The Certificate of Service affixed to the Transfer Motion certifies that the Transfer Motion was "electronically served through ECF to all counsel of record" via Plaintiff Moore's filing of the Transfer Motion on the *Moore* Action docket. (*Moore* Action Dkt. No. 8 at 4.) But Gerber is the *only* party (other than Moore herself) who has appeared and receives ECF notifications of filings made in the *Moore* Action. Plaintiff Moore has provided no evidence that she served the Transfer Motion on any of the other parties to the NJ Actions, including other plaintiffs who chose to file actions in this district—presumably because they want to pursue their claims against Gerber here. Yet, Plaintiff Moore's Transfer Motion would usurp their decisions to file in this district and move their actions to another district without even providing proper notice and an opportunity to be heard.

For this reason alone, Plaintiff Moore's Transfer Motion is improperly noticed and should be denied.  *See* Local Rule 7.1(d)(1) ("No application will be heard unless the moving papers and a brief . . . and ***proof or acknowledgment of service on all other parties***, are filed with the Clerk at least 24 days prior to the noticed motion day") (emphasis added); *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273-74 (3d Cir. 1962) (finding it a violation of due process where "no notice, hearing or opportunity to be heard as to transfer under Section 1404(a) was afforded [to the party] prior to the order of transfer"); *Dish Network Corp. v. TiVo, Inc.*, 604 F. Supp. 2d  719, 725 (D. Del. Mar. 31, 2009) (noting the "[f]ailure to afford parties adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer would in most, if not all, cases violate the parties' due process rights") (citation omitted).

## II.     The NJ Actions Are Not Transferrable Under 28 U.S.C. § 1406(a) Because Venue Is Proper In New Jersey

Gerber agrees with the *Shepard* plaintiffs that the NJ Actions (and any other action filed against Gerber relating to the Report) should be consolidated and remain in the District of New Jersey.  Indeed, for the majority of the time of the proposed class periods set forth in the NJ Actions[6] (and other actions), Gerber was

---

[6] The *Fondacaro* and *Pierre-Louis* plaintiffs allege claims under New Jersey common law, and under N.J. Stat. Ann. 56:8-1, which both have a six-year statute of limitations period.  *See, e.g., Fondacaro* Action Dkt. No. 1 ¶¶ 51-65 (asserting

headquartered in New Jersey and the bulk of the Regulatory, Medical-Scientific, Sales, Marketing, Legal departments and decision makers—including those with information relevant to the claims alleged—were located in New Jersey. (Georgina M. de la Peña Decl. ¶ 11.)  Indeed, relevant witnesses are *still* located in New Jersey.  (*Id*. at ¶ 10.)  Venue is proper in this Court, therefore, because the District of New Jersey is "a judicial district in which a substantial part of the events or omissions giving rise to the claim[s] occurred" with respect to *all* of the claims alleged in the NJ Actions.  28 U.S.C § 1391(b); *see, e.g.*, *Panitch v. Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at *6 (E.D. Pa. Apr. 5, 2017) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred. . . .  More specifically, in the context of claims based on misrepresentations or omissions, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.") (quotation marks omitted) (collecting cases).

Gerber completed relocation of its headquarters from New Jersey to Virginia a little over one year ago.  (Georgina M. de la Peña Decl. ¶ 6.)  Based on the *current* location of Gerber's headquarters and the incorrect assumption that Gerber *might* contest jurisdiction in New Jersey (it does not and will not), Plaintiff Moore

---

NJCFA claim); *Pierre-Louis* Action Dkt. No. 1 ¶¶ 90-114 (asserting NJCFA, fraud, and unjust enrichment claims).

contends the NJ Actions should all be transferred to the Eastern District of Virginia. However, Plaintiff Moore fails to set forth any legitimate factual basis to transfer her action and the other NJ Actions out of this district. A review of the facts set forth above regarding the claims against Gerber demonstrate that the proper venue for these actions is the District of New Jersey and all cases against Gerber should be consolidated with the first-filed *Shepard* Action in this district.

In light of the foregoing, Plaintiff Moore's assertion that the NJ Actions could be transferred to the Eastern District of Virginia under 28 U.S.C. § 1406(a) is wrong. (*Moore* Action Dkt. No. 8-1 at 5-6.) Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the *wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" (emphasis added). As set forth above, this district is the proper venue because Gerber made key decisions relating to the subject matter of these actions, and was primarily located in, New Jersey during the relevant time period. Moreover, § 1406(b) provides that "[n]othing in the chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." 28 U.S.C. §1406(b). Here, Plaintiff Moore waived any objection to venue in this district when she filed her complaint here, and Gerber consents to this Court's exercise of personal jurisdiction over Gerber in the NJ Actions and to

12

venue of the NJ Actions in the District of New Jersey. *See Moore* Action Dkt. No. 1 ¶ 20 (alleging "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over Defendant"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 461, n. 14 (1985) (holding that personal jurisdiction is a waivable right and there are a "variety of legal arrangements" by which a party can give "express or implied consent to the personal jurisdiction of the court"). Section 1406, therefore, does not provide a mechanism to transfer the NJ Actions out of this district.

### III.  Transfer Is Improper Under Section 1404(a)

Transfer of venue of the NJ Actions to the Eastern District of Virginia under 28 U.S.C. § 1404(a) is also unwarranted. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Plaintiff Moore has not satisfied her burden to meet this standard.

*Plaintiff Moore Did Not Satisfy Her Burden.* As a preliminary matter, "[t]he burden of establishing the need for transfer [under 28 U.S.C. § 1404(a)] rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

13

Thus, "[t]he party seeking a transfer should support its motions with affidavits and other documentation that establishes that the interests of justice and convenience of the parties would be best served by a transfer." *In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-2002, 2019 WL 5394109, at *3 (E.D. Pa. Oct. 22, 2019) (quoting *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 326 (D.N.J. 1997)).  "A district court should not transfer a case relying 'entirely on the facts and conclusions asserted in [the movant's] motion.'"  *Id.* (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 755-57 (3d Cir. 1973)).

Here, Plaintiff Moore asks this Court to do precisely that—transfer all of the NJ Actions based solely on (1) Plaintiff Moore's inaccurate speculation that Gerber might challenge this Court's exercise of personal jurisdiction over it (Gerber will not) and (2) the relative caseloads of judges in this district versus the Eastern District of Virginia (which is not a § 1404(a) factor, *see infra*).  Plaintiff Moore failed to support her motion with an affidavit setting forth why, or how, the interests of justice and convenience of the parties would best be served by a transfer (they would not).  Thus, she has failed to satisfy her burden and the Court should deny her Transfer Motion for that reason alone.

***The § 1404(a) Factors Favor New Jersey.***  Notwithstanding Plaintiff Moore's failure to satisfy her burden, the relevant § 1404(a) factors militate in favor of the NJ Actions proceeding in the District of New Jersey.

[In *Jumara*,]the United States Court of Appeals for the Third Circuit listed certain private and public interest factors that may be relevant to the determination of whether to transfer venue pursuant to Section 1404. . . . The private interest factors include: (1) "plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses;" and (6) "the location of books and records (limited to the extent that files could not be produced in alternative forum."

….

The public interest factors include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with applicable state law in diversity cases."

*Consolidated Properties, Inc. v. Sherwin-Williams Co.*, No. 2017-13, 2018 WL 4610622, at *4 (D.V.I. Sept. 25, 2018) (quoting *Jumara*, 55 F.3d 873, 879-80 (3d Cir. 1995)).  Here, consideration of these factors weighs in favor of the NJ Actions proceeding in this district.

The private interest factors all weigh in favor of maintaining the NJ Actions here.  First, Plaintiff Moore—who is a Texas resident—voluntarily chose to file in this district.  *See Moore* Action Dkt. No. 1 ¶ 14.  Second, Gerber's preference is to litigate this and the other NJ Actions in this district.  (Georgina M. de la Peña Decl.

15

¶ 18.)  Third, it is no less convenient for Plaintiff Moore to litigate in New Jersey than Virginia, but it would be less convenient for the plaintiffs in the other NJ Actions, each of whom chose to file in this district, to litigate in a forum not of their choosing.  This is particularly the case for plaintiffs Fondacaro and Pierre-Louis, who are citizens and residents of New Jersey.  In addition, Gerber made the bulk of the relevant marketing and regulatory decisions during the relevant timeframe in New Jersey, and key current and former Gerber witnesses are still located in New Jersey.  (*Id*. at ¶¶ 10, 16.)  Thus, the convenience of the parties and the witnesses weighs in favor of New Jersey.

Similarly, the public interest factors weigh in favor of litigating these actions here.  There will be no issues concerning the enforceability of a judgment, if one is entered, by this Court, and Virginia does not have a stronger public policy interest in purported false advertising cases than New Jersey does.  Practical considerations for trial clearly favor New Jersey because Gerber anticipates that many witnesses located in New Jersey will be key trial witnesses and it would be expeditious and convenient for any such trial to therefore take place in New Jersey. (Georgina M. de la Peña Decl. ¶ 18.)  In addition, the NJ Actions are all assigned to this Court, which has significant experience in complex litigation matters and is therefore well equipped to handle any differences that may arise in the applicable state laws.

Accordingly, the 28 U.S.C. § 1404(a) factors all weigh in favor of the NJ Actions proceeding in New Jersey.

Finally, the first-to-file rule reinforces the impropriety of transferring the NJ Actions to the Eastern District of Virginia.  The first-to-file rule provides that "in all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it."  *Thompson v. Glob. Mktg. Research Servs.*, No. 15-3576, 2016 WL 233702, at *2 (E.D. Pa. Jan. 19, 2016) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824)) (alterations omitted).  The rule "protects 'the party who first brings a controversy into a court of competent jurisdiction from the vexation of subsequent litigation over the same subject matter.'"  *Id.* (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)) (alterations omitted).  Moreover, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.  Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one."  *Id.* (quoting *Villari Brandes & Kline, PC v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009)); *see Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*, No. 09-235, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("For the first-to-file rule to apply,

there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical.") (quotation marks omitted).

Here, the *Shepard* plaintiffs filed their complaint on February 5, 2021, nearly one month before the first plaintiff filed a substantially similar action in the Eastern District of Virginia. *See* Complaint, *Keeter v. Gerber Products Co.*, No. 21-cv-00269-LO-TCB (E.D. Va. March 3, 2021) ("*Keeter* Action"), Dkt. No. 1. Plaintiff Moore filed her complaint in the District of New Jersey on February 12, 2021, nearly three weeks before the filing of the *Keeter* Action. Moreover, the earlier-filed *Shepard* and *Moore* Actions pending in this district are substantially the same as the *Keeter* (and other) Actions pending in the Eastern District of Virginia. All allege on behalf of a putative class of "all persons within the United States" who purchased Gerber's baby food products within the applicable limitations period that Gerber misled consumers by failing to fully disclose the alleged presence of heavy metals in Gerber's baby food products. *See Shepard* Action Dkt. No. 1 ¶ 23; *Moore* Action Dkt. No. 1 ¶ 86; *Keeter* Action Dkt. No. 1 ¶ 82. Accordingly, it is far from proper for a transfer of the NJ Actions from this district to the Eastern District of Virginia; rather, transfer of venue of the Eastern District of Virginia actions *to* this district is warranted, and Gerber intends to so move. The first-to-file rule further compels denial of Plaintiff Moore's motion. *See, e.g.*, *Thompson*, 2016 WL 233702, at *3 (finding first-to-file rule applied and

transferring second-filed action to first-filed district where "[t]he subject matter of [plaintiff's] lawsuit is substantially the same as the allegations in the first-filed *Martin* litigation," even where the putative class definitions in the two cases did not overlap); *Diaz-Lebel v. TD Bank USA, N.A.*, No. 17-1611 (JBS/AMD), 2017 WL 5451747, at *5 (D.N.J. Nov. 14, 2017) ("Since it appears this Court and the District of Minnesota have concurrent jurisdiction over a substantially-similar class action, the first-to-file rule also weighs in favor of transfer to the District of Minnesota," where the first class action was filed).

## <u>CONCLUSION</u>

For the foregoing reasons, Gerber respectfully requests that this Court enter an order (1) denying Plaintiff Moore's Transfer Motion, and (2) consolidating the New Jersey Gerber Actions in this Court under the first-filed action, *Shepard, et al. v. Gerber Products Company*, No. 2:21-cv-01977-CCC-MF.

Respectfully submitted,

Dated April 5, 2021                    KELLEY DRYE & WARREN LLP

By: */s/ Geoffrey W. Castello*
    Geoffrey W. Castello
    Glenn T. Graham
    One Jefferson Road, 2nd Floor
    Parsippany, NJ  07054
    T: (973) 503-5900
    F: (973) 503-5950
    gcastello@kelleydrye.com
    ggraham@kelleydrye.com

Bryan A. Merryman
(admitted *pro hac vice*)
Catherine S. Simonsen
(admitted *pro hac vice*)
WHITE & CASE LLP
555 Flower Street, Suite 2700
Los Angeles, CA 90071-2433
T: (213) 620-7700
F: (213) 452-2329
bmerryman@whitecase.com
catherine.simonsen@whitecase.com

Attorneys for Defendant
*Gerber Products Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2021, I caused a copy of the foregoing to be

served through the Court's ECF upon all counsel of record.


By:   */s/ Geoffrey W. Castello*
            Geoffrey W. Castello