UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: BABY FOOD MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION  MDL No. 2997

ORDER DENYING TRANSFER

**Before the Panel**:[*]  Plaintiffs in the Eastern District of New York *Albano* action move under 28 U.S.C. § 1407 to centralize this litigation in the Eastern District of New York. This litigation consists of 38 actions pending in ten districts, as listed on Schedule A.[1] These actions allege that manufacturers of baby foods knowingly sold baby food products containing heavy metals (specifically, arsenic, lead, cadmium, and mercury), yet marketed these products as healthy and as not containing harmful ingredients. Movants seeks centralization on an industry-wide basis, with the proposed MDL incorporating actions against all major baby food manufacturers. Since the filing of the motion, the Panel has been notified of 48 related federal actions pending in twelve districts.

The motion elicited numerous and varied responses. Plaintiffs in four actions on the motion and six related actions support industry-wide centralization. In addition to the Eastern District of New York, plaintiffs in three of these actions suggest either the Northern District of California or the Southern District of Florida as the transferee district. Plaintiffs in 23 actions on the motion and sixteen related actions oppose centralization on an industry-wide basis. In the alternative, various of these plaintiffs propose the Northern District of California, the District of New Jersey, and the Eastern District of New York as the transferee forum.

Plaintiffs in ten actions on the motion and eleven related actions request or alternatively suggest centralization on a defendant-by-defendant basis. These plaintiffs generally request that the defendant-specific MDLs be centralized in the district where the particular defendant is located, though there is some disagreement among the parties as to what districts those are. Plaintiffs propose centralization of actions naming Beech-Nut Nutrition Company (Beech-Nut) in the Northern District of New York; actions naming Campbell Soup Company and Plum, PBC (collectively, Plum) in the District of New Jersey; actions naming Gerber Products Company (Gerber) in either the District of New Jersey or the Eastern District of Virginia; actions naming

---

[*] One or more Panel members who could be members of the putative classes in this litigation have renounced their participation in these classes and have participated in this decision.

[1] The motion initially listed 43 actions, five of which were later dismissed voluntarily by plaintiffs. At least two of those actions appear to have been re-filed in different districts.

The Hain Celestial Group, Inc. (Hain) in the Eastern District of New York; and actions naming Nurture, Inc., in either the Eastern or Southern Districts of New York.

Defendants Beech-Nut, Plum, Gerber, Hain, Nurture, and Sprout Foods, Inc., oppose any centralization, whether on an industry-wide or defendant-specific basis. Alternatively, if the Panel were to centralize this litigation, these defendants propose the District of New Jersey, the Northern District of New York, and the Southern District of New York as the transferee district. Walmart Inc. also opposes centralization and, alternatively, requests that the two actions in which it is named as a defendant be excluded from any MDL. Safeway, Inc., a defendant in one related action, takes no position on centralization, but suggests that any MDL should be centralized in New Jersey or New York.

In addition, plaintiffs in two related actions pending in the Northern District of California and asserting personal injury claims oppose inclusion of personal injury cases in any MDL. These plaintiffs alternatively suggest the Northern District of California as the transferee district. Plaintiffs in eighteen actions agree that personal injury claims should be excluded from any MDL, as do the responding defendants. Plaintiffs in five actions, as well as defendants, similarly suggest that the two actions asserting industry-wide civil RICO claims be excluded from any MDL.

On the basis of the papers filed and the hearing session held,[2] we conclude that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. At a general level, these actions are similar. All plaintiffs allege that defendants knowingly sold baby food products containing heavy metals and did not disclose this in their marketing. It is not disputed, though, that each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures. The claims against each defendant thus are likely to rise or fall on facts specific to that defendant, such as the amount of heavy metals in its products, the results of its internal testing, if any, and its marketing strategies. Much of the discovery and pretrial practice will be defendant-specific. Plaintiffs overwhelmingly do not assert claims of an industry-wide conspiracy or coordination between defendants.[3] And, although the actions were prompted by a common Congressional investigation, that investigation relied primarily on internal testing conducted by defendants and subpoenaed by the House

---

[2] In light of the concerns about the spread of the COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of May 27, 2021. *See* Suppl. Notice of Hearing Session, MDL No. 2997 (J.P.M.L. May 10, 2021), ECF No. 194.

[3] The exceptions are the two actions asserting civil RICO claims. These claims are somewhat tangential to the marketing claims asserted by most of the other actions, as they relate to allegations that defendants used an industry group known as the Baby Food Counsel to delay adoption of regulatory standards for baby foods and undermine recent studies regarding the presence of heavy metals in baby foods. These claims are sufficiently distinct, and will require unique discovery and pretrial motion practice, that they do not weigh heavily in favor of industry-wide centralization.

- 3 -

Committee. Thus, it seems unlikely that the common Congressional investigation will yield significant common discovery.

We have been cautious when considering industry-wide centralization. *See, e.g.*, *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (observing that the Panel is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses"). Here, 73 of the 86 related actions in this litigation are brought against a single defendant. Of the thirteen multi-defendant actions, two are personal injury actions, which the parties generally agree should be excluded from the MDL, and two assert civil RICO claims, which will involve unique discovery and pretrial practice. The other nine multi-defendant actions are subject to pending or anticipated motions to sever and transfer.[4] Tellingly, centralization is opposed by plaintiffs in 39 actions (representing several different plaintiffs' attorney groups) and all defendants. Given the relatively minimal number of common factual questions, the potential for a multi-defendant MDL to introduce added complexity to this litigation, and the strong opposition of numerous plaintiffs and defendants, we are not persuaded that industry-wide centralization is appropriate.

Nor are we convinced that defendant-specific centralization is warranted at this time. We have emphasized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Most of the 73 defendant-specific actions in this litigation have been filed or transferred to the district where that defendant is (or was) headquartered.[5] Several actions either have been transferred by stipulation or voluntarily

---

[4] Both the Northern District of California and the Eastern District of New York, in their orders consolidating the Plum and Hain actions, respectively, excluded multi-defendant and personal injury actions from the consolidated litigations.

[5] For instance, all fourteen actions against Beech-Nut have been consolidated in the Northern District of New York. Seven actions against Plum are pending in the Northern District of California (where Plum, PBC, was headquartered) and four actions are pending in the District of New Jersey (where Campbell Soup is located). The Plum actions in California have been consolidated, and defendants' motion to transfer those actions to New Jersey is pending. With respect to Gerber, eight actions are pending in the District of New Jersey (where Gerber was headquartered until recently), eight actions are in the Eastern District of Virginia (where Gerber is now headquartered), and one action is pending in the Southern District of Florida. The Gerber actions in New Jersey and Virginia have been consolidated and cross-motions to transfer the actions in each district to the other district are pending. As for Hain, fifteen actions are pending in the Eastern District of New York (where Hain is based) and one action each is pending in the Northern District of California and the Western District of Missouri. Nine of the actions against Nurture are pending in the Southern District of New York, with one action each pending in the District of Montana and the Northern District of Ohio. Sprout Foods is named in only two actions, while Walmart is a defendant in a single action in California.

- 4 -

dismissed and re-filed in the defendant's home district. Several motions to transfer various actions to defendant's home district are pending, as are several motions to sever and transfer multi-defendant actions. We have repeatedly observed that transfer under Section 1404 or the first-to-file doctrine is preferable to Section 1407 centralization. *See, e.g.*, *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380–81 (J.P.M.L. 2012) (discussing advantages of Section 1404 transfer over Section 1407 centralization). We believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation. If the actions against a particular defendant are not consolidated in a single district, *and* if alternative means of informal coordination and cooperation are ineffective with respect to any actions that remain outside the defendants' home district, the parties at that time may pursue a more focused request for centralization.

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| Catherine D. Perry | Nathaniel M. Gorton |
| Matthew F. Kennelly | David C. Norton |
| Roger T. Benitez | Dale A. Kimball |

**IN RE: BABY FOOD MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION**     MDL No. 2997

## SCHEDULE A

<u>Central District of California</u>

ROBBINS v. GERBER PRODUCTS COMPANY, ET AL., C.A. No. 2:21−01457

<u>Northern District of California</u>

IN RE PLUM BABY FOOD LITIGATION, C.A. No. 4:21−00913
MCKEON, ET AL. v. PLUM, PBC, ET AL., C.A. No. 4:21−01113

<u>Northern District of Illinois</u>

GARCES v. GERBER PRODUCTS CO., ET AL., C.A. No. 1:21−00719

<u>District of Kansas</u>

JOHNSON, ET AL. v. BEECH−NUT NUTRITION COMPANY, ET AL.,
    C.A. No. 2:21−02096

<u>Western District of Missouri</u>

SMITH, ET AL. v. THE HAIN CELESTIAL GROUP, INC., C.A. No. 4:21−00129

<u>District of New Jersey</u>

SMID v. CAMPBELL SOUP COMPANY, ET AL., C.A. No. 1:21−02417
SHEPARD, ET AL. v. GERBER PRODUCTS COMPANY, C.A. No. 2:21−01977
MOORE v. GERBER PRODUCTS COMPANY, C.A. No. 2:21−02516

<u>Eastern District of New York</u>

WALLS, ET AL. v. BEECH−NUT NUTRITION COMPANY, ET AL.,
    C.A. No. 1:21−00870
STEWART, ET AL. v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−00678
BREDBERG, ET AL. v. THE HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−00758
MAYS v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−00805
BOYD v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−00884
MCKEON, ET AL. v. HAIN CELESTIAL GROUP, C.A. No. 2:21−00938
BAUMGARTEN v. THE HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−00944
WILLOUGHBY v. HAIN CELESTIAL GROUP, C.A. No. 2:21−00970

LOPEZ−SANCHEZ v. THE HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−01045
ZORRILLA v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−01062
GALLOWAY v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−01067
BACCARI, ET AL. v. HAIN CELESTIAL GROUP, INC., C.A. No. 2:21−01076
ALBANO, ET AL. v. HAIN CELESTIAL GROUP, INC., ET AL., C.A. No. 2:21−01118

Northern District of New York

THOMAS, ET AL. v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00133
PEEK v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00167
MOORE, ET AL. v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00183
DOYLE v. BEECH−NUT NUTRITION CO., C.A. No. 1:21−00186
BOYD v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00200
CANTOR, ET AL. v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00213
HENRY v. BEECH−NUT NUTRITION CO., C.A. No. 1:21−00227
MOTHERWAY v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00229
GANCARZ v. BEECH−NUT NUTRITION COMPANY, C.A. No. 1:21−00258

Southern District of New York

STEWART, ET AL. v. NURTURE, INC., C.A. No. 1:21−01217
SOTO v. NURTURE, INC., C.A. No. 1:21−01271
JAIN v. NURTURE, INC., C.A. No. 1:21−01473
SMITH v. NURTURE, INC., C.A. No. 1:21−01534
HAMPTON, ET AL. v. NURTURE, INC., C.A. No. 1:21−01882

Eastern District of Virginia

KEETER v. GERBER PRODUCTS COMPANY, C.A. No. 1:21−00269
MOORE v. GERBER PRODUCTS COMPANY, C.A. No. 1:21−00277